UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERRY INDUSTRIES LLC, a
Michigan limited liability company,

                                         Civil Action No.

Plaintiff,

                                         Honorable
v.                                        Mag. Judge

BRIAN JOHN PANGRLE,
SILVIA MARIE LAZO,

Defendants.

---

Sara K. MacWilliams (P67805)
Derek Howard (P69625)
Samuel Estenson (P82414)
**Doerr MacWilliams Howard PLLC**
838 W. Long Lake Road, Suite 211
Bloomfield Hills, MI 48302
sara@dmhlawyers.com
derek@dmhlaywers.com
sam@dmhlawyers.com
(248) 432-1586

---

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Cherry Industries LLC ("Cherry"), through its counsel Doerr MacWilliams
Howard PLLC, for its complaint against Brian John Pangrle ("Pangrle") and Silvia
Marie Lazo ("Lazo"), states as follows:

1.      This is an action to redress damages incurred as a result of Defendants'
reckless and aggressive campaign to destroy Plaintiff's business, in a misguided

effort to get back at a fraudster who, ironically, defrauded **both** the Plaintiff and the Defendants in this case.

2.     Defendants worked in concert to harm Plaintiff Cherry's business, reputation, and licensure by repeatedly and publicly spreading falsehoods and misinformation, both via social media and via targeted communications designed to damage or destroy Cherry's business any way possible, including by falsely tying it to the fraudster himself.

3.     Defendants sensational and baseless allegations and malicious plan had real-world consequences, severely damaging Cherry and sending state cannabis regulators on a wild goose chase at the expense of precious regulatory resources.

## **PARTIES AND JURISDICTION**

4.     Plaintiff Cherry is a Michigan limited liability company in the cannabis industry with its primary operations in Detroit, Michigan.

5.     Defendant Pangrle is an individual with a primary residential address of 1110 Eaton Street, Missoula, Montana, 59801.

6.     Defendant Lazo is an individual and Pangrle's wife and business partner, she also has a primary address of 1110 Eaton Street, Missoula,

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different States and the amount in controversy is greater than $75,000.

8.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)(2) because the events giving rise to the claims all occurred in this district.

## GENERAL ALLEGATIONS

9.     Cherry is a cannabis processing company based in Detroit, Michigan, owned and operated by a former automotive executive who parlayed years of successful sales and business development into one of the few thriving, successful cannabis companies still doing well amid an ongoing cannabis market crash.

10.     However, several years ago Cherry's owner was tricked, like many others, into agreeing to do business with a con artist, Lalit Kumar aka Lalit Verma.[1]

11.     Kumar/Verma expressed interest in investing in Cherry, representing that he had extensive business interests in China and millions of dollars to invest.

12.     Kumar/Verma claimed to be a highly successful entrepreneur and made a point of flaunting his alleged wealth, driving luxury sports cars and showing off his multi-million-dollar home near the Pine Lake Country Club.

13.     Kumar/Verma was so convincing and provided enough supposed "proof" regarding his claims of great wealth, expertise, and connections that Cherry's owner ultimately agreed for Kumar/Verma to broker funding and equipment for the business, without realizing that Kumar/Verma would not deliver

---

[1] Upon information and belief, Kumar/Verma has multiple passports and other forms of identification with multiple names, and his true name is unknown. For clarity, he is referred to as Kumar/Verma hereinafter.

what he promised and would use his association with Cherry to perpetuate his web of fraud, without Cherry's consent or knowledge.

14.     As Kumar/Verma tried to insinuate himself into Cherry and its owners' business affairs, Cherry's owner himself was misled by Kumar/Verma into *personally* investing into yet another of Kumar's allegedly highly successful and legitimate ventures, a PPE company called Future Health Technology LLC.

15.     Kumar/Verma also convinced Cherry's owner to rent him idle warehouse space on a parcel near Cherry's headquarters, for another of his allegedly legitimate and profitable healthcare ventures.

16.     However, virtually all of Kumar/Verma's business ventures turned out to be scams, and almost nothing Kumar/Verma said proved to be true.

17.     Cherry and its owner were ultimately defrauded out of millions of dollars, as detailed in a pending lawsuit filed by Cherry and its owner, Clint Cerny, in Wayne County Circuit Court against Kumar/Verma. (**Exhibit A**, First Amended Complaint).

18.     The ill-fated decision to do business with Kumar/Verma was devasting to the business.

19.     Cherry's owner ultimately lost every penny he personally gave Kumar, and is thus a victim of Kumar/Verma, just like Defendants.

20.     Indeed, the association with Kumar/Verma has been devasting for many people, not just Cherry and its owner.

21.     Upon information and belief, around the same time Cherry was being defrauded by Kumar/Verma, Defendant Lazo was, along with thousands of others, also defrauded by Kumar/Verma in relation to a Kumar/Verma controlled entity, Redcliffe Medical Devices, Inc., which sold COVID-19 facemasks with supposedly revolutionary new technology.

22.     Attached at Ex. A, Ex. 2 thereto is a Fox 2 Hall of Shame Article detailing how Kumar/Verma solicited, via crowd-funding, millions of dollars in donations for the supposedly revolutionary Covid-19 prevention masks, induced by pictures of Kumar/Verma with Detroit Mayor Mike Duggan and former Governor Rick Synder, and another showing off his $300,000 Bentley SUV.

23.     Unfortunately for everyone who believed him, including Cherry's owner and Defendants, Kumar/Verma had made up all of his scientific claims, and simply pocketed and/or hid most of the money and then took the entity through a bankruptcy and walked away from liability. (**Ex. B**, Opinion in Case 2:21-cv-10336, ECF No. 42).

24.     It was in part this bankruptcy that revealed Kumar/Verma's fraudulent scheme to Cherry, when Cherry discovered that Cherry was named as a party and

Kumar/Verma and his attorneys were purporting to represent Cherry and filing documents in the bankruptcy allegedly on its behalf. (**Exhibit C,** Bankruptcy filings)

25.     Indeed, Kumar/Verma is well known in the courts as a fraudster. Attached as Exhibit B is an order dated October 18, 2021, from the Hon. Stephen Murphy, in the case filed by Lazo, wherein Judge Murphy dismissed a purported class action in favor of arbitration and detailed Kumar/Verma's fraud, noting that Kumar/Verma was "again engaging in shady business dealings" and noting that there were multiple cases involving Kumar/Verma's fraudulent business dealings pending before this Court. (**Ex. B**, Case 2:21-cv-10336, ECF No. 42, PageID.892).

## Defendants Set Out to Destroy Cherry

26.     Frustratingly, despite being caught up in one of the same Kumar/Verma schemes that damaged Cherry's own owner, even as Defendants struggled to obtain justice through their putative class action (**Ex. B**) they turned their sights on Cherry.

27.     Defendants embarked on a years-long scorched earth campaign against Cherry, another of Kumar/Verma's *victims*, apparently in hopes that hurting Cherry would somehow hurt Kumar/Verma.

28.     Defendants, acting in concert, engaged in a misinformation campaign calculated to do maximum damage, spreading falsehoods and publishing defamatory statements about Cherry.

29.    Starting at least as far back as late 2020, Defendants began falsely inferring to and/or telling third-parties that Kumar/Verma owned or controlled Cherry and that Cherry was part of Kumar's fraud web, including in widely disseminated social media posts.

30.    For example, Defendants posted personal information about Cherry and its owner to a Facebook Group for victims of the mask crowdfunding fraud that, upon information and belief, they controlled, purportedly linking Cherry to Kumar's fraudulent mask business and posting information about Cherry and personal information about its owner.

31.    Around that time, Cherry began to be inundated with complaints from various persons who believed that Kumar/Verma was associated with Cherry and/or controlled or owned it.

32.    This was baffling because Kumar/Verma himself has admitted under oath that he owned no part of Cherry or its affiliated companies in testifying in the aforementioned bankruptcy.

33.    Upon information and belief, Defendants in particular were well aware of the bankruptcy, Kumar/Verma's testimony, and Cherry's efforts to extricate itself from Kumar/Verma's fraud, having followed everything having to do with Kumar/Verma for years.

34.     And yet, Cherry found itself besieged by creditors of Kumar/Verma, all who claimed that Kumar/Verma owned Cherry, just as Defendants falsely claimed.

35.     Seeing no way to stop the ongoing onslaught of Kumar/Verma creditors trying to hold Cherry responsible for Kumar/Verma's debts, Cherry filed a lawsuit in Wayne County Circuit Court to go on record about the harm Kumar/Verma has done to its business and redress the damages. (**Ex. A**).

36.     Cherry also discovered additional information through its investigation which revealed that Defendants campaign against Cherry was far broader and more insidious than previously known.

37.     In addition to broadly disseminating falsehoods and misinformation about Cherry via social media and to various third-parties, Defendants had targeted state cannabis regulators, providing repeated, knowingly false "tips" to the State of Michigan Cannabis Regulatory Agency (or "CRA") about Cherry supposedly hiding or laundering money for Kumar/Verma and Kumar/Verma secretly owning or controlling the business, about Cherry employing known and wanted Southeast Asian counterfeiters or terrorists, about Cherry using illegal pesticides on its plants, and a host of other sensational and deeply damaging falsehoods intended to trigger an unfounded sham inquiry, jeopardize Cherry's licenses to sell cannabis, and otherwise cause pecuniary harm to Cherry.

38.     For example, on April 25, 2023, Defendant Pangrle falsely asserted that Cherry was "funded" by Kumar/Verma's "COVID-19 PPE mask scam," that Cherry was part of an "International Enterprise of scammers," and that "it is unknown **who actually owns** Cherry" (emphasis in original) (a very serious false assertion where the cannabis industry is heavily regulated and individual owners must be duly vetted and approved).

39.     Upon information and belief, Defendants also falsely claimed to third-parties, including regulators at the CRA, that Cherry was illegally using a forbidden pesticide called glyphosate in its grow operations.

40.     For a cannabis company, it is difficult to imagine a falsehood more carefully calibrated to cause injury, in the marketplace and with regulators, then an allegation that its consumable products are tainted or unsafe.

41.     Defendants sent numerous messages, for months on end, inundating regulators with false claims and wasting untold regulatory resources for each individual made up "tip".

42.     Defendants' malicious efforts also caused catastrophic harm to Cherry, including, but not limited to, through the loss of substantial money, time and energy expended trying to undo the damage they caused and set the record straight.

43.     Upon discovering what Defendants were doing, Cherry immediately notified them of the possibility of this litigation and demanded Defendants cease and

desist and retract any and all false statements published or disseminated to date. (**Ex. C**, May 31, 2024 letter).

44.    To date, Defendants have refused to publish any retraction via social media, to the CRA, or otherwise.

45.    In fact, upon information and belief, Defendants *have continued* targeting Cherry and its owner, spreading blatant falsehoods designed to harm its business to the CRA and to other third-parties, and will continue to do so without judicial intervention. Thus, Cherry is left with no choice but to pursue this action.

46.    Defendant Pangrle is an intellectual property law professor at the University of Montana and a practicing attorney. It is not clear why he would risk his professional reputation and license in pursuing such a reckless and malicious campaign to destroy Cherry.

47.    Defendants' years-long campaign of false statements asserting Cherry was engaged in malicious, improper, and criminal conduct were made with, at minimum, reckless indifference as to the truth thereto.

48.    Defendants' scorched earth campaign has severely injured Cherry's business reputation and cost Cherry over a million dollars just to date.

49.    The false and misleading statements and representations Defendants made online and to third-parties devalue Cherry's products, and, upon information and belief, have induced or will induce customers  not to purchase Cherry's products.

50.    The false and misleading statements and representations Defendants made online and to third-parties have also, upon information and belief, caused Cherry to expend significant time and resources unnecessarily, including, but not limited to, in order to resolve disputes with creditors of Kumar/Verma misled to believe Cherry was owned or controlled by Kumar/Verma or somehow responsible for his debts.

51.    The false and misleading statements and representations Defendants made online and to third-parties have also caused Cherry to expend significant resources unnecessarily in the form of significant time and out of pocket costs associated with evaluating Defendants claims and respond to the inquiries of the CRA caused by Defendants false and malicious "tips".

52.    The false and misleading statements and representations Defendants made online and to third-parties have also caused Cherry to expend significant resources unnecessarily in the form of significant time and out of pocket costs associated with seeking from Defendants their voluntary agreement to cease and deist the tortious activities described herein.

53.    Defendants have also inflicted injury on Cherry in the form of loss of business reputation and goodwill, and disruption of Cherry's ongoing business activities.

54.    This injury is particularly egregious where Kumar/Verma and his companies already defrauded Cherry, its owner and related companies out of millions of dollars, and both Plaintiff and Defendants are Kumar/Verma's victims.

55.    Indeed, if Defendants cared about the truth, they would cooperate with Cherry, not make false, public statements, including falsely linking Cherry and Kumar/Verma. Their actions reflect that they are motivated more by malice and a desire to lash out than any interest in truthfulness or justice.

## COUNT I
## INJURIOUS FALSEHOODS

56.    Plaintiff hereby incorporate and reallege all other paragraphs as if fully set forth herein.

57.    Defendants knowingly, intentionally, and maliciously made false and injurious statements about Cherry to third-parties, including, but not limited to, those described herein, in an attempt to damage or destroy the company.

58.    Defendants knew the statements included false and/or misleading statements about Cherry's products, real property, and business.

59.    Alternatively, Defendants made the statements with reckless disregard for whether the statements were true.

60.    Defendants intended for publication of the statements, seemingly calculated for maximum damage, to result in pecuniary harm to Cherry, or either recognized or should have recognized that they were likely to do so.

61.     Cherry's business has suffered pecuniary harm and been deprived of its beneficial relationships with customers, vendors and other third-parties as a result of Defendants' injurious actions and statements.

62.     As a direct and proximate result of Defendants' injurious actions, Cherry has suffered damages including, but not limited to, monetary damages and other damages as more fully described herein.

## COUNT II
## DEFAMATION

63.     Plaintiff hereby incorporate and reallege all other paragraphs as if fully set forth herein.

64.     Defendants knowingly, intentionally, and maliciously made false, defamatory statements about Cherry's reputation and business to third-parties, without privilege, including, but not limited to, those described herein, in an attempt to damage or destroy the company.

65.     Defendants knew the statements were false and defamatory.

66.     Alternatively, Defendants made the statements with reckless disregard for whether the statements were true, or should have known they were untrue.

67.     Because Defendants falsely assert that Cherry engaged in criminal conduct, their statements constitute defamation *per se.*

68.     Cherry's business has been deeply damaged by Defendants' false assertions that Cherry was controlled or affiliated with Kumar/Verma or other

criminals and/or terrorists, liable for their crimes, and/or was otherwise engaged in other regulatory violations or crimes, or that its products were unsafe or unfit for consumption, and Cherry should therefore be investigated, scrutinized and not trusted as a result.

69.    As a direct and proximate result of Defendants' defamatory actions, Cherry has suffered damages including, but not limited to, monetary damages and other damages as more fully described herein.

## COUNT III
## COMMON LAW CONSPIRACY

70.    Plaintiff hereby incorporate and reallege all other paragraphs as if fully set forth herein.

71.    Defendants illegally, maliciously, and wrongfully conspired with one another through an intentional agreement or preconceived plan by acting in concert to spread malicious and unfunded falsehoods and misstatements about Cherry, with a common tortious purpose and design of damaging or destroying Cherry and causing it pecuniary harm and/or loss of reputation and goodwill.

72.    Upon information and belief, together they maintained a website and Facebook group page for the purpose, in part, of publishing false and misleading statements about Cherry, and engaged in a campaign of false and misleading publications to a number of third-parties. This conspiracy resulted in the inequitable, tortious, and /or illegal activity described throughout this Complaint.

73.     This intentional, willful and deliberate behavior over time constituted a pattern of conspiracy with a common, inequitable, tortious, and /or illegal purpose and with the aim of unjustifiably causing economic and other harm to Cherry.

74.     As a direct and proximate result of Defendants' conspiratorial actions, Cherry has suffered damages including, but not limited to, monetary damages and other damages as more fully described herein.

## REQUEST FOR RELIEF

WHEREFORE, Cherry requests that this Court award its damages in an amount to be determined at trial but greater than $75,000, and award Cherry attorney fees and such other and further relief as this Court deems just.

Cherry also requests that this Court enter an order enjoining and restraining Defendants from making false or misleading statements with regard to Cherry, its products, or its business and to retract those statements made to third-parties to date.

Respectfully submitted,

/s/ Sara MacWilliams
Sara K. MacWilliams (P67805)
Derek Howard (P69625)
Samuel Estenson (P82414)
**Doerr MacWilliams Howard PLLC**
838 W. Long Lake Road, Suite 211
Bloomfield Hills, MI 48302
sara@dmhlawyers.com
derek@dmhlaywers.com
Sam@dmhlawyers.com
(248) 432-1586

15

*Attorneys for Plaintiff*

Dated: August 7, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERRY INDUSTRIES LLC, a
Michigan limited liability company,

                                      Civil Action No.

Plaintiff,

v.                                     Honorable
                                          Mag. Judge

BRIAN JOHN PANGRLE,
SILVIA MARIE LAZO,

Defendants.

_____

Sara K. MacWilliams (P67805)
Derek Howard (P69625)
Samuel Estenson (P82414)
**Doerr MacWilliams Howard PLLC**
838 W. Long Lake Road, Suite 211
Bloomfield Hills, MI 48302
sara@dmhlawyers.com
derek@dmhlaywers.com
sam@dmhlawyers.com
(248) 432-1586

_____

## **DEMAND FOR JURY TRIAL**

       NOW COMES Plaintiff Cherry Industries, LLC by and through its attorneys

Doerr MacWilliams Howard PLLC, and hereby respectfully demands trial by jury

on all issues and counts so triable.

                               Respectfully submitted,

                               */s/ Sara MacWilliams*

Sara K. MacWilliams (P67805)
Derek Howard (P69625)
Samuel Estenson (P82414)
**Doerr MacWilliams Howard PLLC**
838 W. Long Lake Road, Suite 211
Bloomfield Hills, MI 48302
sara@dmhlawyers.com
derek@dmhlaywers.com
Sam@dmhlawyers.com
(248) 432-1586

*Attorneys for Plaintiff*

Dated: August 7, 2024

## **VERIFICATION**

Clint Cerny, being duly sworn, deposes, and says:

I have read the foregoing Verified Complaint and know the contents thereof and state the allegations are true and correct. I base this verification on my own personal knowledge, except as to matters therein stated to be alleged upon information and belief, and to those matters, I believe them to be true and correct. The grounds of my knowledge, information, and belief, are derived from my position as the owner of Cherry Industries, LLC, my personal involvement in the events underlying this litigation, and my general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Plaintiff's records.

CLINT CERNY