## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Cherry Industries LLC,

|  |  |  |
|---|---|---|
|  | Plaintiff, | Case No. 24-cv-12060 |
| v. |  | Judith E. Levy |
|  |  | United States District Judge |
| Brian Pangrle, *et al.*, |  |  |
|  |  | Mag. Judge Curtis Ivy, Jr. |
|  | Defendants. |  |

_____/

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS [18]

Before the Court is Defendants Brian Pangrle and Silvia Lazo's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b). (ECF No. 18.) The motion is fully briefed. (ECF Nos. 19, 21.)

For the reasons set forth below, Defendants' motion to dismiss is denied.

### I.     Background

The parties' relationship originated from their dealings with Lalit Kumar, otherwise known as Lalit Verma ("Verma"), a non-party and alleged "con artist" who embarked on a series of fraudulent business ventures. (ECF No. 16, PageID.277.)

Plaintiff, a cannabis processing company in Detroit, Michigan, alleges that several years ago its owner was convinced to conduct business with Verma based on Verma's appearance of success in entrepreneurship and investment. (*Id.* at PageID.277–278.) Specifically, Plaintiff's owner asked Verma "to broker funding and equipment for [Cherry Industries]." (*Id.* at PageID.278.) Plaintiff's owner also rent warehouse space near Plaintiff to Verma and invest in Verma's business, "a PPE company called Future Health Technology LLC." (*Id.*) However, Plaintiff alleges that it and its owner "were ultimately defrauded out of millions of dollars" by Verma and that "almost nothing [Verma] said proved to be true." (*Id.*) Plaintiff and its owner ultimately filed a lawsuit in Wayne County Circuit Court against Verma, alleging RICO violations, breach of contract, fraudulent misrepresentation, and other claims. (*Id.*; *see also* ECF No. 16-2, PageID.326–339.)

Meanwhile, Verma, through his company, Redcliffe Medical Devices, Inc., claimed to sell "supposedly revolutionary Covid-19 prevention masks" called the "Leaf Mask" and solicited millions of dollars through crowd-funding for these masks. (ECF No. 16, PageID.279, 282.) However, Verma's "Leaf Mask" proved to be fraudulent, and Verma

2

"simply pocketed and/or hid most of the money and then took the entity through a bankruptcy and walked away from liability." (*Id.* at PageID.279–280.) Defendant Silvia Marie Lazo was one of the victims of the Leaf Mask fraud. (*Id.* at PageID.279.) Plaintiff alleges that the bankruptcy proceedings revealed Verma's fraud to Plaintiff because it was named as a party in the bankruptcy and Verma "and his attorneys were purporting to represent Cherry and fil[ed] documents in the bankruptcy allegedly on its behalf." (*Id.* at PageID.280.)

After the Leaf Mask fraud was revealed, Defendants, a married couple, began disseminating false statements about Plaintiff "at least as far back as late 2020 and through at least 2023." (*Id.* at PageID.276, 281.) Defendants created a Facebook Group and a blog related to the Leaf Mask fraud, "where together they published detailed personal information about Cherry and its owner, presented in such a manner and with the clear intent to purportedly link Cherry to [Verma's] fraudulent mask business." (*Id.* at PageID.281–282.) Defendants' posts were intended to reach a wide audience and resulted in Plaintiff being "inundated with complaints from various people who believed that [Verma] was associated with Cherry and/or controlled or owned it," as

3

well as Plaintiff being "besieged by creditors of [Verma]" who believed that Verma owned Plaintiff. (*Id.* at PageID.283.) Plaintiff alleges that these false statements devalued its products, "have induced or will induce customers not to purchase Cherry's products," and have caused Plaintiff to expend "significant time and resources unnecessarily" to resolve disputes with Verma's creditors, among other reputational issues. (*Id.* at PageID.287.)

Defendants are also alleged to have knowingly sent false "tips" to the Michigan Cannabis Regulatory Agency ("CRA") beginning in 2021, alleging that Plaintiff was laundering or hiding money for Verma, that Plaintiff employed or hid "Southeast Asian counterfeiters or terrorists," and that Plaintiff used illegal pesticides. (*Id.* at PageID.284.) Plaintiff claims that it has expended significant time and resources resolving these issues.

Finally, Plaintiff claims that it sent Defendants a cease and desist and retraction letter, but that Defendants have not published a retraction and, instead, made their blog and certain Facebook posts private, inhibiting Plaintiff's ability to investigate their previous postings. (*Id.* at PageID.282, 285–286.)

4

## II.    Analysis

Defendants argue that this case must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

### A. Defendants' Rule 12(b)(1) challenge

Defendants assert that the Court lacks subject matter jurisdiction over this case. Plaintiff alleges that the Court has diversity subject matter jurisdiction over this action because the parties are citizens of different states and the amount in controversy is greater than $75,000.00. (ECF No. 16, PageID.277.) Defendants aver that Plaintiff is unable to meet the amount in controversy requirement. (ECF No. 18, PageID.412.)

"In diversity cases, the general rule is that the amount claimed by a plaintiff in his complaint determines the amount in controversy, unless it appears to a legal certainty that the claim is for less than the jurisdictional amount." *Rosen v. Chrysler Corp.*, 205 F.3d 918, 920–21 (6th Cir. 2000).

First, Defendants argue that it is a "legal certainty" that Plaintiff cannot be awarded any damages because it is a marijuana business. (ECF No. 18, PageID.413.) Defendants state, because Plaintiff is operating a

5

"federally illegal marijuana business," Plaintiff cannot assert damages in federal court because it "has no vested property rights in its marijuana business, meaning it can suffer no damage to these rights." (*Id.*) In support of this argument, Defendants cite the Michigan Department of Licensing and Regulatory Affairs, Marijuana Regulatory Agency's Rule 420.6(6), which states, "[a] marijuana license is a revocable privilege granted by the agency and is not a property right." (*See* ECF No. 14-2, PageID.218.) However, Defendants do not adequately explain why Plaintiff lacking a property right in its marijuana license means that it cannot suffer damages to its business, nor why that would affect Plaintiff's injurious falsehood and defamation claims. Defendants also do not adequately explain why Plaintiff's lack of a property right in its marijuana license has any effect on its claims against Defendants for injurious falsehoods and defamation.

Defendants argue that "[s]everal Courts have used the illegality of marijuana under federal law to hold that a plaintiff cannot assert rights regarding these marijuana matters." (ECF No. 18, PageID.413.) However, the cases cited by Defendants have little similarity with this

suit and provide no guidance to the Court relevant to this aspect of Defendants' motion.

In *Viridis Laboratories, LLC v. Kluytman*, the plaintiffs were "'marijuana safety compliance facilities' licensed by the Michigan Marijuana Regulatory Agency (MRA) to 'sample and test adult-use and medical cannabis products.'" *Id.*, No. 1:22-CV-283, 2023 WL 5058087, at *1 (W.D. Mich. June 20, 2023) ("*Viridis I*"), *report and recommendation adopted*, No. 1:22-CV-283, 2023 WL 4861698 (W.D. Mich. July 31, 2023) ("*Viridis II*"). The plaintiffs alleged that the defendants, who were four employees of the MRA, "improperly, and without support, conducted a recall of marijuana products tested by Plaintiffs" and violated the plaintiffs' Fourteenth Amendment due process and equal protection rights. *Viridis I*, 2023 WL 5058087, at *1. The court found that the "federal Constitution does not recognize or protect the interests giving rise to Plaintiff's substantive due process claim" because federal law prohibits the purchase or acquisition of marijuana. *Vidiris II*, 2023 WL 4861698, at *1.

But Plaintiff in this case does not bring federal claims or allege violations of the federal Constitution related to its license. Unlike *Viridis*,

Plaintiff's state-law tort claims do not depend on whether it has demonstrated a "deprivation of a *constitutionally* protected liberty or property interest." *Viridis I*, 2023 WL 5058087, at *2 (emphasis added) (quoting *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017)). The same is true with respect to Defendants' other case, *Hoover v. Michigan Dep't of Licensing & Regul. Affs.*, No. 19-CV-11656, 2020 WL 230136 (E.D. Mich. Jan. 15, 2020), in which the plaintiff claimed that she had a constitutional right under the Fourteenth Amendment's Due Process clause to purchase untested medical marijuana. *Id.* at *8–9. Instead, Plaintiff claims that it was harmed monetarily due to disruptions in its business activities and by legal fees it was forced to incur as a result of Defendants' alleged activities. (ECF No. 16, PageID.286, 290.) Plaintiff's status as a marijuana business is no barrier to it claiming damages to its business in this case.

Next, Defendants claim that "even if damages were available to Plaintiff," Plaintiff cannot meet the $75,000.00 threshold for diversity subject matter jurisdiction because it "fail[ed] to demand retraction thus eliminating its ability to obtain exemplary or punitive damages under Michigan law" and "Plaintiff may only pursue nominal damages." (ECF

No. 18, PageID.414.) Whether or not Plaintiff could not obtain exemplary or punitive damages which need not be decided at this time, Plaintiff is still entitled to actual damages pursuant to Michigan Comp. Laws § 600.2911(2)(a), and/or damages pursuant to Plaintiff's injurious falsehoods claim.[1] Defendants do not demonstrate to a "legal certainty" that the sum of these claims for damages cannot exceed $75,000.00.

Similarly, Defendants' argument that "[t]he balance of Plaintiff's damages allegations are hypothetical" is not relevant. (ECF No. 18, PageID.415.) The fact that allegations of damages are "hypothetical" does not demonstrate "legal certainty" that Plaintiff's damages amount would not exceed $75,000.00.

Finally, Defendants argue that the complaint "fail[s] to mention the existence of special harm, which is required to establish a claim for defamation under Michigan law." (ECF No. 18, PageID.415.) But

---

[1] The parties provide email correspondence that allegedly shows or does not show a demand for retraction by Plaintiff. (ECF Nos. 18-2, 19-3.) Although the Court may consider factual evidence for a Rule 12(b)(1) factual attack on subject matter jurisdiction, *see Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990), the Court declines to do so here because the factual controversy at hand does not contribute to its determination regarding subject matter jurisdiction. Regardless of what was said in these emails, Defendants do not demonstrate "legal certainty" that Plaintiff cannot meet the jurisdiction threshold of over $75,000.00 in damages.

Defendants' citation to *Mitan v. Campbell*, 474 Mich. 21 (2005), expresses the opposite view.[2] According to *Mitan*, a defamation claim requires "**either** actionability of the statement irrespective of special harm (defamation per se) **or** the existence of special harm caused by publication." *Id.* at 24 (emphasis added).

Defendants' reply does not provide clarity.[3] They continue to maintain that Plaintiff "failed to allege sufficient damages" because it "failed to plead special damages," but they do not explain why special harm/damages are required for Plaintiff to meet the jurisdictional threshold for damages. (ECF No. 21, PageID.560.) Again, Michigan law

---

[2] Defendants' argument regarding special harm is so lacking that it may constitute a violation of Federal Rule of Civil Procedure 11. Rule 11(b)(2) states that an attorney, by presenting a motion to the Court, certifies that "the claims, defenses, and other legal contentions" raised by the attorney are either "warranted by existing law" or are supported by a nonfrivolous argument for changing or establishing new law. Here, Defendants' own citation to the Michigan Supreme Court directly contradicts its argument. Defendants are strongly cautioned to take more care in formulating arguments in the future.

[3] The Court notes that Defendants' reply includes the statement, "[t]he allegations of damage cited in footnote 1 above truly mention general harm and general damage, no specific instance of harm, amount, duration, or any other type of cognizable affect." (ECF No. 21, PageID.560.) The Court is unable to discern the meaning of this statement, or what "footnote 1" refers to. Plaintiff's response brief and Defendants' reply brief both contain footnotes, but the first footnote in both documents do not appear related to Defendants' argument regarding special harm. (*See* ECF No. 21, PageID.557 n.1; ECF No. 19, PageID.461–462 n.1.)

10

does not require special harm for a defamation claim if the plaintiff alleges defamation per se, *Mitan*, 474 Mich. at 24, which Plaintiff does here. (*See* ECF No. 16, PageID.290 ("Because Defendants falsely assert that Cherry engaged in criminal conduct, their statements constitute defamation *per se*.")); *see also Lakin v. Rund*, 318 Mich. App. 127, 133 (2016) ("[W]ords charging the commission of a crime are defamatory per se . . . ." (quoting *Burden v. Elias Bros. Big Boy Restaurants*, 240 Mich. App. 723, 727–28 (2000))).

As such, Defendants' arguments pursuant to Rule 12(b)(1) are denied.

## B. Defendants' Rule 12(b)(2) challenge

Defendants also move for dismissal for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 18, PageID.416.)

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move for dismissal for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). If the district court rules on a Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff must make a prima facie case that

11

personal jurisdiction exists.[4] *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). "[A]fter the plaintiff makes a prima facie case for personal jurisdiction, which can be done 'merely through the complaint,' the burden shifts to the defendant." *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 437 (6th Cir. 2022) (quoting *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020)). "When the burden shifts to the defendant, its 'motion to dismiss must be supported by evidence.'" *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 660 (6th Cir. 2023) (quoting *Peters Broad. Eng'g*, 40 F.4th at 437). "The burden then returns 'to the plaintiff, who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" *Id.* (quoting *Peters Broad. Eng'g*, 40 F.4th at 437). The Court views the filings "'in a light most

---

[4] Defendants, in their reply brief, argue that Plaintiff "misconstrued its burden" as a prima facie showing and contend that Plaintiff must demonstrate personal jurisdiction "by a preponderance of the evidence." (ECF No. 21, PageID.561.) But Defendants' own citation to *Kroger Co. v. Malease Foods Corp.,* 437 F.3d 506 (6th Cir. 2006) demonstrates that Defendants are wrong because the Court did not hold— nor did Defendants request—an evidentiary hearing. Again, Defendants are strongly cautioned to read the cases before citing to them and to take more care in formulating arguments in the future.

favorable to the plaintiff,' without weighing 'the controverting assertions of the party seeking dismissal.'" *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017) (quoting *Theunissen,* 935 F.2d at 1459).

Personal jurisdiction can be "general" or "specific." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (citing *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002)). General personal jurisdiction exists when "the defendant's affiliations with the forum state are so continuous and systematic as to render the defendant essentially at home there." *Malone*, 965 F.3d at 501 (cleaned up). Specific personal jurisdiction depends on "an affiliation between the forum state and the underlying controversy." *Id.* at 502 (cleaned up).

### i. *General Jurisdiction*

The Court does not have general personal jurisdiction over Defendants. Pursuant to Mich. Comp. Laws § 600.701, a court has general personal jurisdiction when the individual is (1) present in the state when process is served, (2) domiciled in the state when process is served, or (3) consents to personal jurisdiction.

Plaintiff does not allege that Defendants were present in the state when process was served or are domiciled in Michigan. (ECF No. 16; *see*

*also* ECF No. 10 (certificate of service indicating that Defendants were served in Montana).) Further, Defendants clearly do not consent to personal jurisdiction. Because "the complaint makes no allegations supporting general personal jurisdiction," Plaintiff has not met its burden as to general personal jurisdiction. *Malone*, 965 F.3d at 502.

### ii.    *Specific Jurisdiction*

The Court must determine if it has specific personal jurisdiction over Defendants. Because the Court has diversity subject matter jurisdiction over this suit, *see supra* II.A., the Court may only exercise personal jurisdiction over a party "when such jurisdiction is both authorized by state law and permitted by the Due Process Clause of the Fourteenth Amendment." *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 356 (6th Cir. 2014) (citing *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014)).

Michigan's Long-Arm Statute

Regarding authorization of jurisdiction by state law, the Court looks to Michigan's long-arm statutes. *See* Mich. Comp. Laws §§ 600.701–600.735. "Michigan's interpretation of its long-arm statute requires a

14

separate analysis from the Due Process Clause." *Sullivan*, 79 F.4th at 664. The Court will therefore conduct each analysis separately.

Plaintiff argues that the Court has specific jurisdiction over Defendants pursuant to Mich. Comp. Laws § 600.715(2), which states that "[t]he doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort" is a sufficient basis for jurisdiction. (*See* ECF No. 19, PageID.468.)

Plaintiff does not allege that Defendants conducted any acts while within the state of Michigan, but Michigan's long-arm statute applies to certain activities that occur outside the state. Section 600.715(2) "encompasses a defendant's 'acts outside the state which have consequences inside the state.'" *Sullivan*, 79 F.4th at 668 (quoting *Dornbos v. Kroger Co.*, 9 Mich. App. 515 (1968)). "A plain language reading of these words reveals that *either* the tortious conduct *or* the injury must occur in Michigan." *Id.* (quoting *Green v. Wilson*, 455 Mich. 342, 352 (1997)).

Plaintiff alleges that Defendants conducted acts outside Michigan that had consequences within Michigan. The acts alleged are:

- "falsely inferring and/or telling third-parties that [Verma] owned or controlled Cherry and that Cherry was part of

[Verma]'s fraud web, including in widely disseminated social media posts,"

- creating and controlling a Facebook Group and a blog "where together they published detailed personal information about Cherry and its owner, presented in such a manner and with the clear intent to purportedly link Cherry to [Verma]'s fraudulent mask business,"

- sending tips that they knew were false to the State of Michigan Cannabis Regulation Agency about acts that Plaintiff did not commit, such as money laundering, employing and hiding "Southeast Asian counterfeiters or terrorists," and using illegal pesticides.

(ECF No. 16, PageID.281–285.) Plaintiff claims that these acts had consequences within Michigan, such as inquiries by the CRA that Plaintiff had to resolve and disruptions to Plaintiff's business. (*Id.* at PageID.287.)

Based upon these allegations, the statutory requirements of § 600.715(2) are met such that Michigan's long arm statute applies to Defendants. Plaintiff's allegations sufficiently describe that it "suffered an injury in Michigan due to [Defendants'] allegedly tortious conduct" within the "broad" and "liberal" scope of § 600.715. *Sullivan*, 79 F.4th at 670.

16

Defendants maintain that Michigan's long-arm statute is not applicable and offers as support *Cole v. Doe*, 77 Mich. App. 138, 142 (1977), stating:

> In the *Cole* case, the Michigan Court of Appeals found that requisite contacts with Michigan appeared where **republication of appellant's alleged slander in Michigan** was a clearly foreseeable and conceivably intentional consequence of the original publication. [*Cole*] at p. 143. (emphasis added). In other words, the appellate panel found jurisdiction where the allegedly libelous act **occurred in Michigan**. (emphasis added). Here, Plaintiff makes no such allegation that Defendants published or made any statements in Michigan.

(ECF No. 18, PageID.418 (emphasis in original).) Defendants' argument is not relevant to an analysis of Michigan's long-arm statute because it confuses *Cole*'s analysis of constitutional due process requirements for an analysis of Michigan's long-arm statute. Again, "Michigan's interpretation of its long-arm statute requires a separate analysis from the Due Process Clause." *Sullivan*, 79 F.4th at 664. Any discussion of "minimum contacts" is relevant for a determination of due process, not Michigan's long-arm statute.

<u>Due Process</u>

The Court must also ensure that the exercise of specific personal jurisdiction is proper under the Due Process clause, i.e., that each

17

Defendant "possessed such 'minimum contacts' with the forum state that exercising jurisdiction would comport with "traditional notions of fair play and substantial justice."" *SFS Check, LLC*, 774 F.3d at 356 (quoting *Beydoun*, 768 F.3d at 505). The Sixth Circuit uses a three-part test to determine if minimum contacts exist between a defendant and the state:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id*. It is Plaintiff's burden to demonstrate that personal jurisdiction exists for each Defendant. *Id*. at 355–56.

Defendants first argue that the first prong is not met because Defendants' only alleged contact with Michigan is their "participation in various lawsuits" in the state. (ECF No. 18, PageID.419.) Defendants also dispute whether their Facebook or blog posts are sufficient for purposeful availment under the test described in *Calder v. Jones*, 465 U.S. 783 (1984). (*Id*.)

Plaintiff alleges that Defendants created and controlled a Facebook Group and a blog, "where together they published detailed personal

information about Cherry and its owner, presented in such a manner and with the clear intent to purportedly link Cherry" to fraudulent activity. (ECF No. 16, PageID.281–282.) Defendants allegedly had "the intention of publishing their misinformation to a broader audience" and "broadly disseminated falsehoods and misinformation about Cherry via social media and to various third-parties." (*Id.* at PageID.283–284.) Plaintiff claims that these posts reached customers in Michigan and induced them not to purchase its products. (*Id.* at PageID.287.) These allegations are sufficient for personal jurisdiction. The Sixth Circuit has found that social media posts can be sufficient for purposeful availment under the *Calder* test when the posts are intentionally targeted at the forum state, describe activities in the forum state by a resident of the forum state, and are intended to cause harm in the forum state. *Johnson v. Griffin*, 85 F.4th 429, 433 (6th Cir. 2023).

Further, Defendants do not address Plaintiff's allegations that they knowingly sent false tips to the Michigan CRA alleging criminal conduct or illegal pesticide use by Plaintiff. (ECF No. 16, PageID.284–285.) These alleged communications with Michigan regulators satisfy the purposeful availment prong. "When the actual content of the communications into

the forum gives rise to an intentional tort action, that alone may constitute purposeful availment." *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001); *see also Johnson*, 85 F.4th at 435. Plaintiff alleges that Defendants purposefully sent communications—multiple "tips" to the CRA—knowing that these communications were directed towards a decisionmaker in the forum state and intending an effect in Michigan. (ECF No. 16, PageID.284.) These statements are "the heart of the lawsuit–they were not merely incidental communications sent by the defendant" into Michigan. *Neal*, 270 F.3d at 332.

The second prong of the Due Process analysis requires that Plaintiff's suit "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct*., 592 U.S. 351, 362 (2021) (emphasis omitted) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). The Sixth Circuit explains, "[a]t a minimum, this factor is satisfied if the cause of action, of whatever type, ha[s] a substantial connection with the defendant's in-state activities." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 552 (6th Cir. 2016) (second alteration in original) (internal quotations omitted) (quoting *Bird*, 289 F.3d at 875). "[T]his is a 'lenient standard,' requiring only that the cause of action have

20

a 'substantial connection' to the defendant's activity in the state." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 903 (6th Cir. 2017) (quoting *Bird*, 289 F.3d at 875). Here, the second prong is met because Plaintiff brings suit against Defendants due to their communications with individuals and entities in the state of Michigan.

Finally, the exercise of jurisdiction must not "offend traditional notions of fair play and substantial justice." *Ford*, 592 U.S. at 351 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 323–24 (1945)); *Lyngaas v. Curaden AG*, 992 F.3d 412, 423 (6th Cir. 2021). If the first two prongs of the due process analysis are satisfied, "then there is an inference that the reasonableness prong is satisfied as well." *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005) (citing *CompuServe, Inc.*, 89 F.3d at 1268). In determining the reasonableness of exercising personal jurisdiction over Defendants, the Court must consider "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Id.*

Defendants argue that these factors weigh against reasonableness because "[i]t is extremely burdensome for defrauded Defendants to be

hailed into a Michigan Court to defend against statements that have no relationship to the State of Michigan and, . . . , are time barred, privilege[d], and do not otherwise rise to the level of a cognizable legal claim" and because "[t]he forum state similarly has no interest in forcing Defendants into its Courts for such frivolous matters." (ECF No. 18, PageID.423.) Defendants' argument that their statements "have no relationship to the State of Michigan" is not persuasive because Defendants' statements were directed at and were intended to have effects in Michigan. Defendants' other arguments regarding frivolity or failure to state a claim will be addressed in the Court's Rule 12(b)(6) analysis.[5]

As such, the Court finds that it may exercise personal jurisdiction over Defendants.

---

[5] Similarly, Defendants in their reply brief make several arguments that their "undisputed factual assertions" make clear that Plaintiff cannot establish that personal jurisdiction is appropriate here. (ECF No. 21, PageID.561–562.) The "undisputed factual assertions" Defendants claim to have set forth are "the fact that Cherry has not alleged any substance (including crucial temporal details) to the Facebook Post and the Blog Post" and "that CRA Statements are substantially true and not actionable." (*Id.*) Arguments regarding the "substance" of the blog and Facebook posts and the "truth" of the statements are discussed in the Court's Rule 12(b)(6) analysis.

## C. Defendants' Rule 12(b)(6) challenge

Defendants also challenge Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

### i.    *Statute of Limitations*

Defendants argue that some or all of the injurious falsehood and defamation causes of action should be dismissed due to them being

untimely. (ECF No. 18, PageID.423.) Dismissal of a claim for untimeliness is not appropriate at the motion to dismiss stage unless "the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)

A claim for defamation has a one-year period of limitation, Mich. Comp. Laws § 600.5805(9), unless the period of limitation is tolled. "The statute of limitations begins to run when a claim first accrues." *Roberts v. Detroit Pub. Sch.*, No. 269414, 2007 WL 127791, at *3 (Mich. Ct. App. Jan. 18, 2007). The period may be tolled if the defendant "fraudulently conceals the existence of" the defamatory statement or their identity. *Hope-Jackson v. Washington*, 311 Mich. App. 602, 617–18 (2015) (citing Mich. Comp. Laws § 600.5855). Republication of the statements does not extend the period for filing the claim. *Mitan*, 474 Mich. 21 at 25.

Plaintiff filed suit on August 7, 2024. (ECF No. 1.) As such, alleged statements must have been made on or after August 7, 2023 to fall within the period of limitation, unless there is reason to toll the limitations. Here, Plaintiff claims that "through at least 2023," Defendants spread and "continued to post" allegedly false information about Plaintiff. (ECF

24

No. 16, PageID.281–282.) To the extent these statements were made on or after August 7, 2023, they may form the basis for a defamation claim.

Additionally, Plaintiff alleges that Defendants "began making certain select Facebook posts referencing Cherry and the entire blog private." (ECF No. 16, PageID.282.) To the extent Defendants' actions constituted "fraudulent concealment" of defamatory statements, those concealed statements may also form the basis of a defamation claim. As such, the Court declines to dismiss Plaintiff's defamation claim at this time because the allegations in the amended complaint do not "affirmatively show that the claim is time-barred." *Cataldo*, 676 F.3d at 547.

The Court also declines to dismiss Plaintiff's claim for injurious falsehood at this stage of the litigation. A claim for injurious falsehood has a three-year period of limitations. *Kollenberg v. Ramirez*, 127 Mich. App. 345, 354 (1983). Again, Plaintiff alleges that Defendants spread falsehoods about it from September 2021 and "through at least 2023." (ECF No. 16, PageID.281–282, 284.) To the extent statements were made on or after August 7, 2021, three years before the filing of the complaint, they may form the basis for a claim of injurious falsehood. As such, the

25

Court will not dismiss Plaintiff's injurious falsehood claims for timeliness.

    *ii.   Privilege*

Defendants also argue that "Plaintiff's allegations of defamation (especially with respect to statements made to the CRA and [Plaintiff's supposed use of an illegal pesticide]) are absolutely privileged and thus not actionable" as a matter of law because they were "made during or in relation to judicial" or "quasi-judicial" proceedings. (ECF No. 18, PageID.424–425 (citing *Couch v. Schultz*, 193 Mich. App. 292, 294 (1992)).)

Under Michigan law, a defamatory statement must be "an unprivileged communication to a third party." *Mitan*, 474 Mich. at 24. Privilege is a defense in a defamation action, *Bedford v. Witte*, 318 Mich. App. 60, 65 (2016), and a statement that is "absolutely privileged" "is one for which no remedy is provided for damages . . . because of the occasion on which the communication is made." *Couch*, 193 Mich. App. at 294 (citing *Schlinkert v. Henderson*, 331 Mich. 284, 290 (1951)). "The defense of privilege is grounded in public policy; in certain situations, the criticism uttered by the defendant is sufficiently important to justify

protecting such criticism notwithstanding the harm done to the person at whom the criticism is directed." *Bedford*, 318 Mich. App. at 65 (citing *Dadd v. Mount Hope Church*, 486 Mich. 857, 860 (2010)). Importantly, "absolute privilege against a defamation action is limited to narrowly defined areas." *Oesterle v. Wallace*, 272 Mich. App. 260, 264 (2006).

Michigan law confers absolute privilege to statements made during judicial proceedings. "Statements made by judges, attorneys, and witnesses during the course of judicial proceedings are absolutely privileged if they are relevant, material, or pertinent to the issue being tried." *Id.* This absolute immunity also extends to "pleadings and affidavits," *id.* at 265 (citing *Couch*, 193 Mich. App. at 294), as well as statements made during settlement negotiations. *Id.* at 268.

Michigan has expanded the absolute privilege afforded to judicial proceedings to "quasi-judicial proceedings," i.e., "any hearing before a tribunal or administrative board that performs a judicial function." *Id.* at 265 (quoting *Couch*, 193 Mich. App. at 294). In the past, Michigan courts have determined that certain proceedings are "quasi-judicial" based on their similarities to actual judicial proceedings. For example, the Michigan Court of Appeals in *Couch* held that prisoner disciplinary

hearings have "many attributes of a judicial proceeding": the decision is rendered "in writing" and includes "findings of fact," and the prisoner has an entitlement to present evidence and "oral and written arguments on the contested issues," have "notice of the disciplinary hearing," and have "judicial review of the hearing officer's decision." *Id.* at 296. *Couch* also expressed "strong policy reasons" that "favor a finding of absolute privilege"; specifically, *Couch* was concerned that permitting prisoners to bring defamation claims against corrections officers "would have a chilling effect upon the reporting of offenses within a prison and would result in the courts being inundated with prisoners' lawsuits." *Id.* at 297.

To the extent Defendants argue that their statements, generally, are absolutely privileged, this argument is rejected. (*See* ECF No. 18, PageID.424.) There is no indication that alleged Facebook or blog posts could be "made during or in relation to judicial proceedings and quasi-judicial proceedings," and Defendants do not explain how they could be construed as such. Defendants claim that the absolute privilege "covers anything that may be said in relation to the matter at issue." (ECF No. 18, PageID.425 (citing *Couch*, 193 Mich. App. at 295).) But Defendants misstate the criteria for absolute privilege. It is clear that, for absolute

28

privilege to attach to a statement, it must be "made in the course of [a] judicial proceeding." *Timmis v. Bennett*, 352 Mich. 355, 365 (1958); *see also Bedford*, 318 Mich. App. at 65–66, 71 (finding that statements in an interview about a lawsuit and posting the complaint and a link to the interview on a website are not subject to "judicial-proceedings privilege").

Regarding Defendants' argument that their statements to the CRA are absolutely privileged, the Court declines to hold as such at this time. Defendants, as the moving party, have "the 'burden' of demonstrating the plaintiff's 'failure to state a claim.'" *Gorski v. Ascension St. John Hosp.*, 725 F. Supp. 3d 718, 723 (E.D. Mich. 2024) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)). But Defendants do not demonstrate that the alleged statements are absolutely privileged.

In support of their argument, Defendants cite *Dixon v. Oakland Cnty.*, No. 332831, 2017 WL 4158028, at *4 (Mich. Ct. App. Sept. 19, 2017). In *Dixon*, the Michigan Court of Appeals stated in an unpublished opinion that "a hearing before the [Michigan Liquor Control Commission ("MLCC")] is a quasi-judicial proceeding." *Id.* Defendants claim that "[t]he proceedings before the MLCC are akin to the proceedings before

29

the CRA where Defendant Pangrle, allegedly, made statements . . . ."
(ECF No. 18, PageID.425.)

However, Defendants do not provide any information to the Court regarding the similarities between the MLCC's "quasi-judicial" proceedings and the CRA's "proceedings," to the extent they exist. Defendants also do not present any justification for the Court to determine that this information, whatever it might be, would be judicially noticeable at the motion to dismiss stage. The Court notes that the "quasi-judicial" nature of the MLCC in *Dixon* was undisputed; as such, the Court is unable to follow the reasoning set forth in that unpublished opinion. *Dixon*, 2017 WL 4158028, at *4. Additionally, Plaintiff's complaint and attachments do not contain any information regarding the CRA complaint process such that the Court could determine if it has "many attributes of a judicial proceeding." *Couch*, 193 Mich. App. at 296.[6]

---

[6] Defendants, in their reply brief, also cite *NAS Sur. Group v. Cooper Ins. Ctr., Inc.*, 617 F. Supp. 2d 581 (W.D. Mich. 2007), in which the court found that "administrative complaints filed with the [Michigan] Office of Financial and Insurance Services [("OFIS")]" are subject to absolute privilege. *Id.* at 587. But the court in *NAS* determined that absolute privilege should apply because the OFIS process is very similar to ordinary judicial processes. *Id.* at 588. Again, the Court does

Defendants' reply also lacks sufficient justification for a finding of absolute privilege. There, Defendants argue that absolute privilege "covers any report of criminal activity to law enforcement." (ECF No. 21, PageID.562.) Defendants cite *Eddington v. Torrez*, 311 Mich. App. 198 (2015), in which the Michigan Court of Appeals reaffirmed that "reports of crimes or of information about crimes **to the police** are absolutely privileged." *Id.* at 202 (emphasis added). The Court is not convinced that the CRA is "law enforcement personnel" as contemplated by *Eddington* such that absolute privilege is appropriate for that reason. For example, Defendants do not provide any specific citations to authority demonstrating that the CRA was granted the power to conduct a criminal investigation.

Defendants claim:

> The CRA is tasked with investigatory and law enforcement authority over its licensees granted under Bills 2018 IL 1 and 4049. It actively solicits complaints via its website in furtherance of its mission: "To protect the health, safety, and welfare of consumers and the public." Rule 420.07 Dept. of Licensing and Regulatory Affairs. This mission is consistent with the police powers of the states.

---

not have sufficient information regarding the CRA process to find that absolute privilege should apply to Defendants' alleged statements.

(ECF No. 21, PageID.562–563 n.6.) First, the Court is unable to locate a "Rule 420.07" in the Michigan administrative code. Second, the Court is unable to locate a Michigan Bill introduced in 2018 with the number 4049.[7] To the extent Defendants intended to cite 2023 Michigan House Bill No. 4049, which concerns proposed amendments to the Michigan Regulation and Taxation of Marihuana Act, the bill never became law and thus did not "grant" the CRA any authority. Finally, Defendants' argument regarding "authority" granted to the CRA under the Michigan Regulation and Taxation of Marihuana Act, cited by Defendants as "Bill[] 2018 IL 1," is not well taken. Defendants cite to the entirety of this Act, leaving the Court to locate relevant sections of the Act and develop Defendants' arguments for them. Defendants' undeveloped argument is rejected by the Court. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal

---

[7] 2017 Michigan House Bill No. 4049, which was introduced in the 2017–2018 session, concerns amendments to the "insurance code of 1956" and motor vehicle accident policies. *See* 2017 MI H.B. 4049. The Court assumes that Defendants did not intend to cite to this bill. Again, the Court reminds Defendants to read their own work carefully before submitting it to the Court for consideration.

way, leaving the court to . . . put flesh on its bones." (alteration in original) (internal citation omitted)).

For the reasons set forth above, the Court declines to find at this time that an absolute privilege precludes Plaintiff's claims regarding statements to the CRA.

### iii.   Stating a claim against each Defendant

Finally, Defendants argue that the complaint must be dismissed for failure to state a claim against each Defendant. (ECF No. 18, PageID.426–427.)

As an initial matter, the Court rejects Defendants' arguments regarding the truth of their statements or Plaintiff's history with the CRA. (*Id.* at PageID.427–428.) Defendants claim that their statements to the CRA "are substantially true," that Plaintiff's reputation is in such poor condition that any harm to its reputation could not cause any detriment, that the CRA has issued over ten formal complaints against Plaintiff, and that it did not renew Plaintiff's license. (*Id.*; *see also id.* at PageID.429, 430; ECF No. 21, PageID.562 (Defendants claiming that it "remains undisputed . . . that [the] CRA Statements are substantially true").) Defendants also submit exhibits that purportedly demonstrate

33

the truth of the statements.[8] (ECF Nos. 14-2, PageID.265–273; ECF No.

18-2.)

The Court is not convinced that all of Defendants' exhibits and

arguments are relevant, but, more importantly, finds that these

arguments are inappropriate at this stage of the case. When considering

a Rule 12(b)(6) motion to dismiss, the Court may not consider matters

outside the pleadings. Fed. R. Civ. P. 12(b)(6), (d). "If, on a motion under

Rule 12(b)(6) . . . matters outside the pleadings are presented to and not

excluded by the court, the motion must be treated as one for summary

judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court does not find

that these exhibits can be considered part of the pleadings, and

Defendants do not present any argument as to why the Court may

---

[8] One such exhibit is Defendants' "Exhibit A", which includes a screenshot of "https://lostleatbackers.wordpress.com" and demonstrates that the content is unavailable and "doesn't exist." (ECF No. 18, PageID.408, 429; *see also* ECF No. 18-2, PageID.436 (photo of webpage stating, "lostleatbackers.woodpress.com doesn't exist"). Defendants claim that their Exhibit A demonstrates that the blog that Plaintiff alleged was the site of false and defamatory statements does not exist. (ECF No. 18, PageID.408.)

Even if the Court could consider Defendants' Exhibit A, it would be wholly unhelpful because Defendants misspelled the name of the blog. Plaintiff alleges that the blog was "located at https://lost**leaf**backers.wordpress.com," not "lost**leat**backers." (ECF No. 16, PageID.281 (emphasis added).)

34

consider the exhibits at this stage of the case. As such, the Court will not consider Defendants' exhibits or their arguments regarding the truth of their statements. (ECF Nos. 14-2, PageID.265–273; ECF No. 18-2.)

Next, Defendants argue that Plaintiff's amended complaint must be dismissed because "a 'plaintiff claiming defamation must plead a defamation claim with specificity by identifying the exact language that the plaintiff alleges to be defamatory.'" (ECF No. 18, PageID.428 (quoting *Ghanam v. Does*, 303 Mich. App. 522, 538 (2014)).) Defendants also suggest that Plaintiff is required to plead the exact date of the defamatory statements as well. (*Id.*) While it is true that Michigan state courts require that the plaintiff allege the "exact language" of the defamation in their pleadings, *see Thomas M. Cooley L. Sch. v. Doe 1*, 300 Mich. App. 245, 263 (2013), federal courts follow the pleading standards set forth by the Federal Rules of Civil Procedure. *Armstrong v. Shirvell*, 596 F. App'x 433, 459 (6th Cir. 2015) ("[T]he pleading rules in a [] diversity case are governed by the federal pleading standards."); *see also Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (stating that federal courts "apply state substantive law and federal procedural law") (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

35

Numerous courts have held that a plaintiff bringing a Michigan defamation claim in federal court is "not required to allege the circumstances of defamation with particularity" if the plaintiff provides sufficient allegations such that their complaint comports with Federal Rule of Civil Procedure 8(a). *See Armstrong*, 596 F. App'x at 444; *State Farm Fire & Cas. Co. v. Allied & Assocs.*, 860 F. Supp. 2d 432, 446 (E.D. Mich. 2012); *JM Adjustment Servs., LLC v. J.P. Morgan Chase Bank, N.A.*, No. 16-10630, 2018 WL 1168940, at *10 (E.D. Mich. Mar. 6, 2018). Here, Plaintiff alleges that Defendants wrote and disseminated false statements about Plaintiff beginning in "late 2020 and through at least 2023" on their blog and their Facebook Group, (ECF No. 16, PageID.276, 281–292) and sent false "tips" to the CRA beginning in 2021. (*Id.* at PageID.284.) Plaintiff does allege some specific dates and statements (*id.* at PageID.284–285) and also attached to its amended complaint copies of some of these "tips" to the CRA, which include specific statements and dates. (ECF No. 16-2, PageID.369–371.) The Court finds that Plaintiff's allegations are sufficient for Rule 8(a) purposes.

Finally, Defendants' arguments regarding the sufficiency of the pleadings as to Defendant Lazo are also rejected. Defendants argue that

"Plaintiff's Complaint is completely devoid of any factual allegation sufficient to state any claim against Defendant Lazo," and that "Plaintiff does not ever allege that Defendant Lazo, herself, made or published any statements whatsoever." (ECF No. 18, PageID.426.) But Plaintiff's amended complaint clearly alleges that "Defendants worked **in concert** . . . by repeatedly and publicly spreading falsehoods and misinformation," that both Defendants created and controlled the Facebook Group and blog, and "**together** published personal information about Cherry" that Plaintiff believes is defamatory or false. (ECF No. 16, PageID.276, 281–282 (emphasis added).) The Court finds that it is a reasonable inference that Plaintiff intended to plead that both Defendants had written and published such statements.

As such, the Court declines to dismiss the amended complaint pursuant to Rule 12(b)(6).

### D. Defendants' request for sanctions

Defendants, in their motion to dismiss, also request that the Court "exercise its inherent authority to sanction Plaintiff and its counsel." (ECF No. 18, PageID.431.) First, Defendants state, "there is no merit to any of the claims in the [first amended complaint]" and "Plaintiff and its

counsel should have known this." (*Id*.; *see also id.* (claiming that the case is motivated by bad faith)) But, as set forth above, Defendants have not demonstrated that Plaintiff's claims are "meritless."

Next, Defendants claim that Plaintiff and its counsel "intentionally misrepresented dates and statements in order to trick the Court into believing that there exists actionable claims in this case." (*Id.*) Defendants appear to take issue with Plaintiff's allegation that Defendants sent false "tips" to the CRA "beginning in September 2021." (ECF No. 16, PageID.285.) Defendants believe that this allegation is "extremely misleading and concerning" because an exhibit attached to the amended complaint demonstrates that Pangrle sent a "tip" to the CRA as early as July 7, 2021. (ECF No. 18, PageID.409; *see* ECF No. 16-2, PageID.371.) Defendants claim that Plaintiff's allegation that the "tips" began in September 2021 "is a fraudulent attempt to circumvent the applicable statute of limitations." (ECF No. 18, PageID.410.)

Defendants' argument makes little sense. As set forth above, a claim for injurious falsehood has a three-year period of limitations. *Kollenberg*, 127 Mich. App. at 354. Statements made on or after August 7, 2021, three years before the filing of the complaint, may form the basis

38

for a claim of injurious falsehood. Plaintiff alleges that Defendants made statements through blog posts, Facebook posts, and CRA "tips" that occurred during this three-year period. (*See* ECF No. 16, PageID.281–282, 284.) Additionally, Plaintiff's attachments to the amended complaint demonstrate that Pangrle may have sent two "tips" regarding Plaintiff to the CRA on November 9, 2022, which falls within the three-year statute of limitation. (ECF No. 16-2, PageID.370.) Finally, it is undisputed that statements made by Pangrle in July 2021 are not actionable. (*See* ECF No. 19, PageID.476 n.3 (describing the July 2021 statements as occurring "*prior* to the timespan relevant to Cherry's claims").) As such, Defendants fail to demonstrate how any statement by Plaintiff could be a "fraudulent attempt to circumvent the applicable statute of limitations" and could reasonably be construed as an act that warrants sanctions.

As such, the Court denies Defendants' request for sanctions and cautions Defendants against frivolous motions for sanctions in the future. *See All. to End Repression v. City of Chicago*, 899 F.2d 582, 583 (7th Cir. 1990) ("It is essential to maintain the line between vigorous advocacy . . . and frivolous conduct. . . Hair-trigger motions for sanctions by lawyers

who do not recognize this difference are themselves sanctionable.") (internal citations omitted).

## III.  Conclusion

For the reasons set forth above, Defendants' motion to dismiss (ECF No. 18) is DENIED.

IT IS SO ORDERED.

Dated: August 21, 2025  
Ann Arbor, Michigan

s/Judith E. Levy  
JUDITH E. LEVY  
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 21, 2025.

s/William Barkholz  
WILLIAM BARKHOLZ  
Case Manager